IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


UNITED STATES OF AMERICA,


v.                                                    CASE NO. 1:04cr25-SPM/AK

MARCUS H. RICHARDS,

     Defendant.

_____/


## **REPORT AND RECOMMENDATION**


     This cause is before the Court on Defendant's motion to vacate filed pursuant to 28

U.S.C. § 2255.  Doc. 66.  The Government has filed its response, Doc.73, and Defendant has

filed a reply.  Doc. 74.  In response to the Court's order, the Government has filed notarized

affidavits, Doc. 80, and Defendant has filed a reply to them.  Doc. 81.  This matter is therefore in

a posture for decision.  Having carefully considered the matter, the Court recommends that the

motion be denied.

## **BACKGROUND**

     Defendant was indicted for conspiracy to distribute and possess with intent to distribute

more than 5 kilograms of cocaine and more than 50 grams of cocaine base.  On October 27,

2004, Defendant appeared before the undersigned for an initial appearance and arraignment, and

he was advised at that time that he faced a minimum mandatory term of imprisonment of 10

years with a maximum term of life.  When the undersigned asked counsel for the Government if

he was aware of anything which might enhance the term of imprisonment, counsel stated that

Defendant had a prior felony conviction, which would place the minimum mandatory term of

imprisonment at 20 years, not 10 years.  Defendant acknowledged that he understood the

possible term of imprisonment.[1]  At the conclusion of this hearing, the Court ordered Defendant

detained pending trial  and in its order of detention noted: "As a prior convicted drug felon,

Defendant is facing a mandatory minimum sentence of twenty years imprisonment."  Doc. 17.

On the following day, the Government filed an Information and Notice of Intent, advising

Defendant that because he had a 1994 state felony drug conviction for trafficking in cocaine, he

faced "a mandatory term of twenty (20) years to Life imprisonment...."  Doc. 18.  The Notice

was electronically served on defense counsel on November 4, 2004.  *Id.*

On December 13, 2004, Defendant pled guilty to Count One of the Indictment.  While no

Plea Agreement was signed or filed, a Statement of Facts was placed into the record and filed.

Doc. 29.  In that document, Defendant agreed that "if this case were to go to trial, the United

States would produce competent, substantial evidence to prove" Defendant's involvement in the

charged drug conspiracy.  He further agreed that the Government would be able to produce

evidence that he was "personally responsible for the distribution of more than 5 kilograms of

cocaine."  *Id.*

During the plea colloquy, the Court advised Defendant that if the case were tried, the

Government would be required "specifically [to] prove to the jury beyond a reasonable doubt"

both the type and quantity of the drugs involved in the conspiracy.  Doc. 35.  Later, in response

---

[1]The Court located the recording, which is in the possession of the Clerk of Court,
documenting this proceeding, but it did not have the recording transcribed.  It is located on CD
04-05 at 2:42:41.

to the Court's questions, Defendant advised that counsel, Tom Miller, had discussed *Blakely* with him and that he understood that by pleading guilty he waived "a jury determination of all sentencing factors," agreed "to the Court's determination of [his] guideline range," and stated his understanding that "after it has been determined what guidelines apply to [his] case, [the Court had] the authority in some limited circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines...."  *Id*.

The Court specifically advised Defendant that the Government had filed a "written notice that you have a prior felony conviction which subjects you to an enhanced statutory penalty" and reiterated that he was facing a  minimum mandatory 20-year sentence because of the enhancement.  *Id*.  The Court also told Defendant that if he had any argument that the prior felony drug conviction was invalid or could not otherwise be used as a basis for enhancement, then he "must raise the argument before your sentence is imposed...."  *Id*.  The Court further warned Defendant that if the sentence were more severe than he expected, he would not be allowed to withdraw it but would "still be bound by [his] plea...."  *Id*.

Though the Court did not specifically question Defendant as to whether any force, threats, or promises had been made to secure his change of plea, it advised Defendant of the rights he was waiving, including, but not limited to, his right to trial by jury, his right against self-incrimination, and his right to confront witnesses; questioned Defendant's satisfaction with counsel's representation; and found his plea to be knowing and voluntary and to have been made "with the advice and counsel of a competent lawyer with whom you say you are well pleased." *Id*.

Before sentencing, Defendant hired private counsel, Cloud Miller.  In a January 10, 2005, letter to counsel, Defendant asked counsel to contact the Government "to amend my plea agreement to reflect no admission to drug quantity."  Doc. 68, Ex. 1.  He advised counsel that he did not wish to withdraw his plea because if he did, the Government would have "a new opportunity to file" an enhancement notice.  *Id*.  Though Defendant indicated to Cloud Miller that the Government had not filed an enhancement notice, as noted *supra*, the Government had in fact filed a Notice of Intent to seek the enhanced penalty, and the Court had advised Defendant of that fact at the plea hearing.

Sentencing was held post-*Booker*.  At the sentencing hearing, Cloud Miller objected to the amount of cocaine attributed to Defendant but did not challenge the validity of the prior felony drug conviction.  Doc. 54.  The Government presented testimony from a police officer who disclosed Defendant's involvement with other defendants and the amount of cocaine each had purchased from Defendant.  While counsel argued that Defendant was a mere middleman, not a distributor, the Court credited the officer's testimony and found Defendant responsible for 449.25 kilograms of cocaine, thereby placing his Guidelines range at 188 to 235 months. Because the amount of cocaine at issue exceeded 5 kilograms and Defendant had a prior felony conviction, the Court sentenced Defendant to 240 months imprisonment, the statutory mandatory minimum.  After sentencing, Defendant told the Court that he was surprised that he was being held accountable for such a large quantity of cocaine, that his original attorney "didn't really explain all of that" to him, and that he had no knowledge of the enhancement.  *Id*.

On appeal, Defendant argued that the Court erred in its Guidelines range calculation when it "found that he was responsible for 432 kilograms of cocaine, a fact which he did not admit at the plea hearing."  Doc. 62.  Thus, in his view, his sentence was improperly enhanced in

violation of *Booker*.  *Id*.  The Eleventh Circuit rejected this argument, finding that any error in calculating the Guidelines range was harmless since the Court correctly imposed the statutory mandatory minimum sentence.  *Id*.

The instant motion to vacate followed.  On this occasion, Defendant raises the following issues: (1) whether Tom Miller rendered ineffective assistance when he "made no pretrial investigation, no discovery, and no preparation of [Defendant] for trial," thereby "forc[ing] [Defendant] to make an impromptu change of plea to guilty rather than face[ ] the absolute unknown at trial" and when he told Defendant the Government would not seek an enhanced sentence if he pled guilty; (2) whether the Court was without jurisdiction to impose the enhanced sentence when Defendant "was not personally served a copy" of the Notice of Intent; (3) whether his sentence violated due process based on the Government's failure to "notify him personally in writing" of the "recidivist statute" and on the Court's failure to find the amount of cocaine at issue beyond a reasonable doubt and without Defendant's admission as to the drug quantity; (4) whether Defendant's guilty plea was knowing and voluntary; and (5) whether Cloud Miller rendered ineffective assistance on appeal when he refused to raise issues related to the enhancement.

Each will be considered in turn.

## DISCUSSION

1.      Whether Tom Miller was ineffective.

Because two of Defendant's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable

professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute

rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

Tom Miller's affidavit and supporting documents refute Defendant's allegation that trial counsel did not make any pretrial investigation or secure discovery and that he did not prepare Defendant for trial.  At the November 2, 2004, detention hearing, evidence was presented by the case agent identifying cooperating defendants and the substance of their knowledge.  Thus, counsel knew quite early on that there would be a large number of witnesses who would testify that Defendant was their cocaine supplier and that the Government had money transfers, cell phone tolls, rental car records, and tape recordings to support the conspiracy charge against Defendant.  Doc. 80, Attach. B.  Furthermore, as evidenced by Tom Miller's November 5, 2004, letter to Defendant, it is equally clear from the record that counsel secured other discovery from the Government which Defendant does not dispute receiving.  Defendant's suggestion that counsel improperly failed to request Jencks Act materials is inapposite, as there is no Jencks Act obligation to disclose a Government witness' statements until after the witness has testified on direct examination at trial, *see* 18 U.S.C. § 3500, while the Government is required under the local rules of this Court to divulge *Giglio* materials shortly after arraignment, *see* N.D. Fla Loc. R. 26.3(D)(2), Defendant has not produced any evidence that *Giglio* evidence existed, that the Government failed to comply with this Court's rule requiring production of *Giglio* evidence, or that counsel acted deficiently in not moving to compel the Government to produce such evidence if it existed.  Indisputably, Tom Miller met with Defendant before trial, and the record shows that he was prepared to go forward with trial.  *See* Docs. 20 (Defendant's *ex parte* motion for issuance of witness subpoena), 21 (order granting *ex parte* motion), & 23 (Defendant's witness list).  Counsel requested only one, one-day continuance to secure clothing for Defendant's attendance at trial.  Thus, Defendant's allegation that he was forced to plead guilty because

counsel was not prepared for trial is flatly refuted by the record.

Furthermore, Defendant's contention that Tom Miller told him that the Government would not seek an enhanced sentence if he pled guilty is not credible.   "[T]he representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in...subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977).  At the plea hearing, the Court specifically advised Defendant again that the Government was seeking an enhanced minimum mandatory sentence of 20 years imprisonment because of his prior felony record and asked Defendant if he had talked to his attorney about his possible sentence.  Defendant advised the Court that he and counsel had discussed the issue of sentencing and that he was satisfied with Tom Miller's representation of him.  To now say that he did not know he was facing the enhanced sentence or that he pled guilty with an assurance that he would not receive the minimum mandatory sentence called for by statute when the Court plainly gave him the opportunity to express his alleged misunderstanding or to alert the Court to counsel's alleged misadvice is a contention "that in the face of the record [is] wholly incredible."

Defendant's first ground for relief should therefore be denied.

2.      Whether the Court had jurisdiction to impose enhanced sentence.

In this claim, Defendant argues that the Court was without jurisdiction to impose the enhanced sentence because he was not personally served with a copy of the Notice of Intent.  While Defendant may not have received the Notice personally, it was, according to the

certificate of service, served on counsel by "electronic delivery."  According to the Federal Rule

of Criminal Procedure, this was sufficient, and service was complete upon transmission.  See

Fed. R. Crim. P. 49(b) (when defendant is represented by counsel, "service must be made on the

attorney instead of the party" and is to made in manner provided for in civil action); Fed. R. Civ.

P. 5(b) (service by electronic means is complete upon transmission).  *See generally United States*

*v. Novaton*, 271 F.3d 968, 1016 (11th Cir. 2001).  According to the plain language of the statute,

the notice need only be served on either counsel or defendant, and because it was served on

counsel, the Government fulfilled its statutory obligations.  *See also United States v. West*, 130

Fed. Appx. 753, 760 (6th Cir. 2005) (notice to defendant's counsel is constructive notice to

defendant); *United States v. Kennedy*, 133 F.3d 53, 60 (D.C. Cir. 1998) (section 851 notice must

be served on defendant or counsel).

 Because counsel was served with the enhancement notice, the Court had jurisdiction to

enhance Defendant's sentence, and this claim should be denied.

 3. Whether Defendant's sentence violated due process.

 In this claim, Defendant charges that his due process rights were violated based on the

Government's failure to "notify him personally in writing" of the "recidivist statute" and on the

Court's failure to find the amount of cocaine at issue beyond a reasonable doubt and without

Defendant's admission as to the drug quantity.  As discussed *supra*, Defendant did not have to be

personally advised in writing of the so-called "recidivist statute," as his attorney was served with

a copy of the Notice of Intent to seek the enhanced sentence based on Defendant's prior felony

drug record.  Furthermore, beginning at the initial appearance and arraignment and continuing

through sentencing, Defendant was repeatedly advised that the minimum mandatory sentence

was 20 years imprisonment.  In any event, because Defendant's prior drug conviction was more

than 5 years old at the time of the enhancement notice, it was not challengeable as a matter of law.  *See* 21 U.S.C. § 851(e).

At his plea, Defendant admitted that he was "personally responsible for the distribution of more than five kilograms of cocaine," and he was plainly advised that by pleading guilty, he was waiving his right to have a jury determine the drug quantity beyond a reasonable doubt. With that admission in hand, there is nothing in *Apprendi* or its progeny which prevents the Court from determining drug quantity and other extra-verdict enhancements by a preponderance of the evidence.  *United States v. Rodriguez*, 398 F.3d 1291, 1297 (11th Cir. 2005).  The law is clear that in a conspiracy case, the relevant conduct of the co-conspirators is properly considered in assessing a defendant's overall offense level, including the "quantity of drugs that passed through" the co-conspirators.  *United States v. Gallashaw*, 213 Fed. Appx. 792, 795 (11th Cir. 2007).  Relevant conduct is considered under a preponderance of the evidence standard, not the beyond a reasonable doubt standard.  *Id.*

This claim is therefore without merit.

4.     Whether Defendant's guilty plea was knowing and voluntary.

In this claim, Defendant argues that he his plea was not knowing and voluntary because he pled guilty "'with the assumption'" that he would not be held accountable for drug quantities beyond those amounts he actually sold, and that the Government "would forego 851 enhancement process and the court would not apply the recidivist statutory mandatory minimum sentence, following his guilty plea."

While Defendant might not have understood that he would be held accountable for all of the cocaine in the conspiracy, not just the amount he personally sold, the argument is without merit, as the statute calls for a mandatory minimum sentence of 20 years imprisonment when the amount of cocaine exceeds 5 kilograms and the defendant has at least one prior felony drug conviction.  Defendant pled guilty to being a part of a conspiracy involving more than 5 kilograms of cocaine, and no lesser amount of cocaine was ever mentioned, not even by counsel at sentencing.  Furthermore, as noted previously, his prior conviction was not challengeable as a matter of law, thereby mandating the 20-year minimum sentence.  *Booker* did nothing to alter the fact that the Court "was, and still is, bound by the statutory minimums."  *United States v. Shelton*, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005).

Furthermore, Defendant's suggestion that he thought the Government would not seek to enforce the statutory minimum mandatory sentence is flatly belied by the record, which shows that the Court itself repeatedly advised Defendant that he faced a minimum mandatory sentence of 20 years.  When the Court asked Defendant at the plea hearing if he "understood the enhanced statutory penalty that you face," Defendant unequivocally stated, "Yes, sir."  It is clear from a reading of the cold transcript alone that Defendant was lucid, cognizant, articulate, and intelligent, and certainly, the Court's contemporaneous finding that the plea was knowing and voluntary, supported as it was by the Court's own personal observations, is entitled to great deference, since the "voluntariness of a plea is ascertained in light of all the relevant surrounding circumstances."  *United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982).

This claim is without merit.

5.      Whether Cloud Miller rendered ineffective assistance.

In his final claim, Defendant maintains that Cloud Miller was ineffective when he failed to raise Defendant's alleged lack of knowledge of the sentencing enhancement as an issue on appeal.  The Eleventh Circuit applies the *Strickland* standards to this type of claim, and thus, the Court begins with a consideration of that case.  *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  In assessing appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issues."  *Heath*, 941 F.2d at 1130-31.  Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious."  *Id.* at 1131.  When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance.  *Id.*  Although a non-appealed issue might have been successful if it had been raised, appellate advocacy must be "judged in its entirety."  *Id.*   To determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim.  *Heath*, 941 F.2d at 1132.  "If the Court finds that the neglected claim would have a reasonable probability of success on appeal, then...it is necessary to find 'appellate counsel's performance prejudicial because it affected the outcome of the appeal.'"  *Id.* (citation omitted).

As previously discussed, Defendant indisputably had notice of the enhancement via the Court's statements to him at the initial appearance and arraignment and at the change of plea hearing, and thus, Cloud Miller was not deficient in failing to raise a frivolous argument on appeal.  In light of the record, the argument had no chance of success on appeal, and therefore, Defendant was not prejudiced by the failure to advance it.

The claim should be denied.

**<u>CONCLUSION</u>**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's

motion to vacate, Doc. 66, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this ___27th___ day of October, 2008.


## s/ A. KORNBLUM

**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**